Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| LG ELECTRONICS PANAMA, S.A<br><br>APELADO<br><br>UNITED SURETY & INDEMNITY COMPANY, INC<br><br>APELANTE<br><br>V<br><br>ENGINEERING SYSTEMS &: SALES, INC. y Otros<br><br>TERCEROS DEMANDADOS | TA2025AP00250 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. DAC-2014-1284<br><br>Sobre: Cobro de dinero e incumplimiento de contrato |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Pagán Ocasio, y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 16 de octubre de 2025.

### I.

El 18 de agosto de 2025, United Surety & Indemnity Company (USIC o parte apelante) presentó el recurso de *Apelación* en el que solicitó que revoquemos la *Sentencia Sumaria Parcial* emitida el 16 de julio de 2025, notificada digitalmente el 18 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón.[1] En el referido dictamen, el TPI declaró Ha Lugar una solicitud de sentencia sumaria parcial presentada por LG Electronics Panamá, S.A. (LGE o parte apelada).

El 19 de agosto de 2025, USIC instó una *Moción informativa sobre notificación de presentación del recurso de apelación,* en la cual

---

[1] Véase Entrada Núm. 1 del apéndice del recurso en el Sistema Unificado de Manejo y Administración del Caso (SUMAC) del Tribunal de Apelaciones (TA).

informó haber notificado el recurso presentado tanto al TPI como a la parte apelada y los terceros demandados de epígrafe.[2]

El 21 de agosto de 2025, emitimos una *Resolución* a través de la cual concedimos a LGE hasta el 17 de septiembre de 2025, para presentar su alegato en oposición.[3]

El 16 de septiembre de 2025, la parte apelada presentó *Alegato de la parte apelada,* en el que solicitó que se confirme la *Sentencia Sumaria Parcial.*[4]

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y procederemos a discutir los hechos pertinentes a la controversia ante nuestra consideración.

**II.**

El caso de marras tiene su génesis el 14 de mayo de 2014, cuando LGE presentó una *Demanda* contra USIC por cobro de dinero e incumplimiento de contrato.[5] En esta, alegó ser una corporación dedicada a la venta de productos de la marca LG. En ese contexto, sostuvo que para el 20 de diciembre de 2012, suscribió un *Master Supply Agreement* (Acuerdo de Distribución) con el señor Rolando Ávila (señor Ávila), en su capacidad de presidente de Engineering Systems & Sales, Inc. (ENSYSA), por medio del cual le concedió a esta última el derecho no exclusivo de solicitar órdenes de productos marca LG para su reventa no exclusiva en Puerto Rico y las Islas Vírgenes.[6] Adujo que como parte de las estipulaciones del Acuerdo de Distribución, se incluyó una cláusula disponiendo que ante cualquier orden de compra que no fuese pagada al momento de la fecha de vencimiento y permaneciera pendiente de pago luego

---

[2] Véase Entrada Núm. 2 del recurso en SUMAC-TA.
[3] Véase Entrada Núm. 3 del recurso en SUMAC-TA.
[4] Véase Entrada Núm. 5 del recurso en SUMAC-TA.
[5] Véase Entrada Núm. 1 del apéndice del recurso en SUMAC-TA.
[6] Íd., págs. 12-19.

de tal fecha, ENSYSA vendría obligada a pagar una suma adicional al monto pendiente por concepto de daños.[7]

Añadió que, como parte de los acuerdos, ENSYSA garantizó el pago de ciertas órdenes de compra con contratos de fianza suscritos con USIC. Detalló que el 26 de febrero de 2013, ENSYSA y USIC suscribieron el Contrato de Fianza Número 13156931 (Fianza #13156931), a favor de LGE, garantizando el pago de todas las órdenes de compra que no estuviesen garantizadas por una fianza específica. Adujo que posteriormente, el 16 de agosto de 2013, ENSYSA suscribió otros dos contratos de garantía con USIC, también a favor de LGE. En virtud del primero, Contrato de Fianza Número 13160613 (Fianza #13160613), USIC garantizó el pago de $498,691.00 por la orden de compra número J13-055-A. A través del segundo, Contrato de Fianza Número 13160612 (Fianza #13160612), USIC aseguró la cantidad de $111,342.00, en atención a la orden de compra número J13-055-B.

Cabe señalar que, como parte de los acuerdos de estos contratos, la obligación de USIC se extinguía si: (1) ENSYSA realizaba los pagos correspondientes o, (2) si LGE no sometía la reclamación a USIC dentro de un término de sesenta (60) días contados a partir del incumplimiento de ENSYSA.

Así las cosas, LGE adujo que envió a ENSYSA varias facturas dentro del término de vencimiento pactado, correspondientes a las

---

[7] En detalle, la cláusula número 8 del Acuerdo de Distribución dispone lo siguiente:

    8.  <u>Late Payment</u>

       For invoice not paid when due, the Buyer shall be obliged to pay LGE liquidated damages which will be applied to the overdue amount at the highest rate allowed under the applicable law, whichever is higher, from the due date to the actual payment date. In addition LGE may, without waiving any other rights or remedies to which it may be entitled, refuse to ship the ordered Products (even if the Order was accepted by LGE) and may seek collection from the Buyer of any unpaid amounts, plus legal interest, reasonable legal fees and costs of collection. This right to refuse shipment of products can be exercised by LGE, even if the invoices not paid correspond to other companies belonging to the same economical group of Buyer or if they correspond to companies which Buyer exercises effective control.

órdenes de compra garantizadas por los contratos antes señalados. No obstante, manifestó que esta incumplió con los términos del Acuerdo de Distribución y dejó de pagar las cantidades facturadas. Consecuentemente, arguyó que el 14 de noviembre de 2013, detuvo la entrega de producto a ENSYSA. Ante ello, esgrimió que el 14 de enero de 2014, ENSYSA le remitió un correo electrónico en el cual le informó la cancelación del Acuerdo de Distribución, efectivo el 15 de febrero de 2014.

En vista de lo anterior, sostuvo que 11 de febrero de 2014, cursó una reclamación a USIC para el pago de las facturas pendientes. Sin embargo, señaló que el 20 de febrero de 2014, USIC denegó su reclamación, asegurando que ENSYSA había alertado sobre discrepancias en el monto exigido. Manifestó que el 8 y 16 de abril de 2014, solicitó la reconsideración de dicha determinación, pero USIC mantuvo su decisión.

Por todo lo anterior, LGE reclamó el pago de $498,689.58, $111,341.45 y $258,707.91, correspondiente a las órdenes de compra pendientes de pago, garantizadas por los contratos de fianza suscritos por ENSYSA y USIC. Afirmó que la deuda era vencida, líquida y exigible. Por otro lado, solicitó una suma no menor de $250,00.00 por concepto de daños, y exigió el pago de intereses legales, gastos y honorarios de abogado por temeridad.

El 14 de julio de 2014, USIC presentó una *Contestación a Demanda*, en la que negó la mayoría de las alegaciones materiales de la demanda.[8] Entre sus defensas afirmativas, levantó la defensa de compensación. En ese sentido, sostuvo que de existir alguna deuda, se debían restar los daños ocasionados por LGE a ENSYSA por alegado incumplimiento de contrato. Sobre ello, precisó que las actuaciones de LGE constituyeron una terminación constructiva del

---

[8] Véase Entrada Núm. 3 del apéndice del recurso en SUMAC-TA.

contrato, sin justa causa. De otro lado, adujo que la parte apelada no presentó su reclamación a USIC dentro del término de sesenta (60) días establecido para ello.

El 13 de agosto de 2014, USIC instó una *Demanda contra tercero* para traer al pleito a ENSYSA, el señor Ávila, la señora Elizabeth Champana y la Sociedad Legal de Gananciales compuesta por estos últimos, y al señor Rolando Ávila Jr.[9] Manifestó que como parte de los contratos de garantía suscritos, ENSYSA había otorgado unos *General Agreement of Indemnity*, a través de los cuales se comprometió a indemnizar a USIC por, entre otros, toda pérdida, responsabilidad, costos, daños, honorarios y desembolsos.

El 17 de noviembre de 2014, ENSYSA instó *Contestación a Demanda contra tercero*, en la cual adujo que se vio obligada a retrasar ciertos pagos para mitigar daños, pues las actuaciones y omisiones de LGE estaban estrangulando el negocio. Entre sus defensas afirmativas, también incluyó la doctrina de compensación, y manifestó que los actos y omisiones de LGE constituyeron una terminación constructiva sin justa causa del Acuerdo de Distribución.

Tras varios trámites procesales, el 27 de marzo de 2015, LGE instó una *Moción para que se elimine la Demanda contra tercero presentada por USIC, la Contestación a Demanda contra tercero presentada por ENSYSA, y la defensa de compensación o "set off" invocada por ambas; y se ordene a arbitrar la supuesta reclamación de daños por incumplimiento de contrato.*[10] En esencia, adujo que la demanda contra terceros y su contestación constituían una reclamación separada entre USIC y ENSYSA, por lo que debían ser eliminadas. Por otro lado, manifestó que no concurrían los elementos que exige el ordenamiento jurídico para que procediera la

[9] Véase Entrada Núm. 4 del apéndice del recurso en SUMAC-TA.
[10] Véase Entrada Núm. 6 del apéndice del recurso en SUMAC-TA.

defensa de compensación. Por último, solicitó que la defensa levantada por USIC por sobre alegado incumplimiento contractual se remitiera a arbitraje, pues así había sido establecido en el Acuerdo de Distribución.

El 24 de abril de 2015, la parte apelante radicó una *Oposición a "Moción para que se elimine la Demanda contra tercero presentada por USIC, la Contestación a Demanda contra tercero presentada por ENSYSA, y la defensa de compensación o "set off" invocada por ambas; y se ordene a arbitrar la supuesta reclamación de daños por incumplimiento de contrato"*.[11] Mediante esta, manifestó que la reclamación contra terceros tenía como único fin recobrar a ENSYSA cualquier suma que tuviese que pagar bajo los contratos de fianza. Además, indicó que tenía derecho a presentar las mismas defensas afirmativas a las que tenía derecho ENSYSA. De otra parte, sostuvo que no había sido parte del Acuerdo de Distribución, por lo que la cláusula de arbitraje no le era vinculante. En la alternativa, indicó que aun cuando la referida cláusula aplicara a USCI, la parte apelada había renunciado a esta al presentar su causa de acción ante el foro judicial.

Más adelante, el 26 de agosto de 2015, notificada el 2 de septiembre de 2015, el Tribunal emitió una *Resolución* en la cual declaró No Ha Lugar la moción presentada por LGE el 27 de marzo de 2015, y ordenó la continuación del descubrimiento de prueba.[12] En lo pertinente, el foro primario razonó que (1) la demanda contra terceros fue presentada conforme a derecho, (2) tanto USIC como ENSYSA presentaron la defensa de compensación eficazmente y, (3) la cláusula de arbitraje no era de aplicación, y aun cuando aplicase, había sido renunciada por LGE al presentar el pleito ante el foro judicial.

---

[11] Véase Entrada Núm. 7 del apéndice del recurso en SUMAC-TA.
[12] Véase Entrada Núm. 8 del apéndice del recurso en SUMAC-TA.

LGE impugnó dicha determinación ante el Tribunal de Apelaciones, en el caso identificado con el alfanumérico KLCE201501487.[13] Un Panel hermano de este foro emitió una *Sentencia* el 15 de enero de 2016, notificada el 28 de enero de 2016, mediante la cual resolvió que procedía modificar la *Resolución*, a los únicos efectos de que se llevara a cabo el proceso de arbitraje con respecto a la defensa de USIC por presunto incumplimiento contractual.

Posteriormente, el 30 de marzo de 2016, el TPI celebró una vista, cuyas incidencias quedaron recogidas en una *Minuta* transcrita el 1 de abril de 2016.[14] De esta se desprende que las partes informaron al foro primario que no existía disputa en cuanto a la cantidad que se estaba reclamando en la demanda. En ese sentido, el representante legal de ENSYSA, licenciado Orlando Fernández Carmona, señaló que el arbitraje resolvería el caso, pues no existía controversia en que hubo unos embarques y había unas facturas sin pagar.

Más adelante, el 16 de junio de 2016, LGE, USIC y ENSYSA presentaron una *Moción Conjunta*, en la cual expresaron nuevamente que no existía controversia sobre la cuantía reclamada por LGE, por lo que lo único que se estaría tramitando ante el foro primario sería lo relacionado a las facturas objetadas por USIC.[15]

Tras otros varios trámites procesales, el 15 de mayo de 2017, el TPI emitió una *Sentencia Administrativa* decretando la

---

[13] Véase Entrada Núm. 9 del apéndice del recurso en SUMAC-TA.

[14] Véase Exhibit 1 de la Entrada Núm. 11 del apéndice del recurso en SUMAC-TA.

[15] Véase Exhibit 2 de la Entrada Núm. 11 del apéndice del recurso en SUMAC-TA. En específico, las partes de epígrafe informaron lo siguiente:

> Estando en curso en Panamá lo relacionad[o] con los alegados incumplimientos y daños a ENSYSA y **habiéndose aceptado la cuantía total de las facturas reclamadas en este caso**, se estaría tramitando concurrentemente ante este Tribunal lo relacionado con ciertas facturas que USIC reclama quedaría fuera de las fianzas por razón de no haber sido oportunamente notificadas bajo las fianzas. (Énfasis suplido).

paralización del caso y ordenando su archivo administrativo, hasta tanto concluyera el proceso de arbitraje.[16]

Así las cosas, el 26 de enero de 2023, LGE instó una *Moción solicitando reapertura, continuación de los procedimientos, y sentencia sumaria parcial ordenando el pago de dinero adeudado a LGE.*[17] Por medio de esta, arguyó que el proceso de arbitraje había culminado con una denegatoria de la petición de los daños reclamados por ENSYSA a LGE. En atención a ello, solicitó la reapertura del caso y que se dictara sentencia sumaria parcial contra USIC. En lo que respecta a la solicitud de sentencia sumaria, LGE propuso catorce (14) hechos incontrovertidos. Señaló que de conformidad a lo informado por las partes en la vista celebrada el 30 de marzo de 2016, y la *Moción Conjunta* del 16 de junio de 2016, no existía controversia sobre las siguientes cantidades: (i) $498,690.58 por la orden de compra J13-055-A, cubiertos por la Fianza #13160613; (ii) $111,341.45 por la orden de compra J13-055-B, cubierta por la Fianza #13160612 y, (iii) $148,690.58, relacionado a veintitrés (23) facturas, cubiertas por la Fianza #13156931.

Junto a su solicitud de sentencia sumaria parcial, la parte apelada incluyó una serie de anejos entre los que figuraron: (1) el Laudo Final en Derecho dictado por el Centro de Conciliación y Arbitraje de Panamá; (2) una carta del 13 de junio de 2016, suscrita por el representante legal de USIC, el licenciado Luis E. Fusté Lacourt, dirigida al licenciado Orlando Martínez Echevarría, representante legal de LGE, objetando varias de las facturas

---

[16] Véase Entrada Núm. 10 del apéndice del recurso en SUMAC-TA. Según lo pactado por las partes en el Acuerdo de Distribución, el proceso de arbitraje debía llevarse a cabo de conformidad a las reglas del Centro de Conciliación y Arbitraje de la Cámara de Comercio, Industrias y Agricultura de Panamá. Véase Entrada Núm. 1 del apéndice del recurso en SUMAC-TA, pág. 14.

[17] Véase Entradas Núm. 11-13 del apéndice del recurso en SUMAC-TA.

reclamadas, garantizadas por la Fianza #13156931[18]; (3) los contratos de garantía suscritos por USIC y LGE y (4) las facturas en cuestión.

Poco más de un año después, el 8 de marzo de 2024, USIC instó *Oposición a solicitud de apertura del caso, moción eliminatoria y, en la alternativa, solicitud al amparo de las Reglas 36.5 y 36.6 de Procedimiento Civil*.[19] En primer orden, alegó que no procedía la reapertura del caso, pues habían transcurrido cinco años y medio (5½) desde la emisión del laudo y LGE no había realizado gestión alguna para que el Tribunal de los Estados Unidos para el Distrito de Puerto Rico lo confirmara, según exigía la Ley Federal de Arbitraje, 9 U.S.C. section 1, *et seq*. Adujo que como consecuencia de ello, el laudo había perdido vigencia y era ineficaz.

Por otro lado, arguyó que la reapertura del caso en dicha etapa de los procedimientos iba en contra del interés público de que los casos fueran vistos oportunamente, por lo que aplicaba la doctrina de incuria. Finalmente, requirió que de ordenarse la reapertura del caso, se le concediera un término para llevar a cabo un breve descubrimiento de prueba previo a oponerse a la solicitud de sentencia sumaria parcial. Contrario a lo informado al tribunal previamente, argumentó por primera vez que sí existía controversia sobre las cuantías adeudadas, puesto que LGE no había aplicado a las facturas unos descuentos pactados en el Acuerdo de Distribución.

El 1 de abril de 2024, LGE presentó una *Respuesta a "Oposición a solicitud de apertura del caso, moción eliminatoria y, en*

---

[18] En detalle, USIC adujo que no procedía la reclamación de las siguientes facturas garantizadas por la Fianza #13156931, por no haberse notificado la reclamación dentro del término pactado: PHQ039429, PHQ040755, PHQ040768, PHQ040947, PSSIPHQ050067, PSSIPHQ050149, PSSIPHQ050298, PSSIPHQ050369, PSSIPHQ050480, PSSIPHQ050546, PSSIPHQ050851, PSSIPHQ050988, PSSIPHQ051065, PSSIPHQ051109, PSSIPHQ051252, PSSIPHQ051324, PSSIPHQ051544, PSSIPHQ051675. Véase, Exhibit Núm. 4 de la Entrada Núm. 12 del apéndice del recurso en SUMAC-TA.
[19] Véase Entrada Núm. 14 del apéndice del recurso en SUMAC-TA.

*la alternativa, solicitud al amparo de las Reglas 36.5 y 36.6 de Procedimiento Civil"*, en la que insistió en que no existía controversia sobre las cantidades que ENSYSA le adeudaba, por lo que procedía la sentencia sumaria parcial.[20] Añadió que la reclamación de cobro de dinero era independiente al laudo, por lo que la jurisdicción del foro primario no dependía de este último.

El 31 de mayo de 2024, el TPI celebró una vista argumentativa donde las partes abundaron en sus planteamientos.[21] Tras ser escuchados, el foro primario hizo constar que permitiría la continuación del pleito en cuanto al cobro de dinero. Además, dio por sometida la solicitud de sentencia sumaria parcial hasta que culminara el descubrimiento de prueba solicitado por USIC.

Así las cosas, el 13 de junio de 2025, USIC instó una *Oposición a moción solicitando sentencia sumaria parcial*.[22] En primer orden, arguyó que los documentos anejados a la moción de sentencia sumaria parcial eran inadmisibles de conformidad a la Regla 36 de Procedimiento Civil, 34 LPRA Ap. V, R. 36. En lo que concierne, precisó que las facturas presentadas por LGE no habían sido autenticadas conforme a la Regla 901 de Evidencia, 32 LPRA Ap. VI, R. 901. En respaldo a su moción en oposición, USIC presentó, entre otros, una escueta declaración jurada del señor Ávila, donde sostuvo que ninguna de las facturas reclamadas reflejaban el descuento pactado en el Acuerdo de Distribución.

Tras varios trámites procesales, el 16 de julio de 2025, notificada el 18 de julio de 2025, el TPI emitió la *Sentencia Sumaria Parcial* apelada.[23] En virtud de esta, dio por admitidos los hechos incontrovertidos propuestos por LGE y dispuso que no existían controversias sobre los siguientes hechos materiales:

---

[20] Véase Entrada Núm. 15 del apéndice del recurso en SUMAC-TA.
[21] Véase Entrada Núm. 16 del apéndice del recurso en SUMAC-TA.
[22] Véase Entrada Núm. 17 del apéndice del recurso en SUMAC-TA.
[23] Véase Entrada Núm. 2 del apéndice del recurso en SUMAC-TA.

1. USIC expidió a favor de LG la Fianza 13160613, mediante la cual se obligó solidariamente con ENSYSA a pagar a LG el importe total de los productos adquiridos por ENSYSA en virtud de la orden de compra J13-055-A, por la cantidad de $498,691.00.

2. USIC expidió a favor de LG la Fianza 13160612 mediante la cual se obligó solidariamente con ENSYSA a pagar a LG el importe total de los productos adquiridos por ENSYSA en virtud de la orden de compra J13-055-B por la cantidad de $111,342.00.

3. USIC expidió a favor de LG la Fianza 13156931 mediante la cual USIC garantizó a favor de LG el pago, hasta un total de $500,000.00, de los productos adquiridos por ENSYSA bajo el "Master Supply Agreement" entre LG y ENSYSA que no estuvieren garantizad[o]s por una fianza específica.

4. LG entregó los productos al fiado de USIC.

5. ENYSA recibió y no pagó por los productos reclamados en la Demanda que se detallan a [sic] en la Orden de Compra J13-055-A, a saber 38 unidades del Modelo ARUN036GS2 y 198 unidades del Modelo ARUN047GS2, y las facturas correspondientes:

| Factura Núm. | Cantidad |
|---|---|
| PHQ040878 | $108,636.12 |
| PHQ040879 | $106,506.00 |
| PHQ040888 | $110,766.24 |
| PHQ040889 | $102,488.26 |
| PHQ041446 | $53,253.00 |
| PHQ042080 | $17,040.96 |
| Total | $498,690.58 |

6. ENYSA recibió y no pagó por los productos reclamados en la Demanda que se detallan a [sic] en la Orden de Compra J13-055-B, a saber, 55 unidades del Modelo ARUN036GS2, y las facturas correspondientes:

| Factura Núm. | Cantidad |
|---|---|
| PHQ042079 | $101,219.5[0] |
| PHQ042081 | $10,121.95 |
| Total | $111,341.45 |

7. ENYSA recibió y no pagó por los productos reclamados en la Demanda que no estaban cubiertos por fianzas específicas y se desglosaron en las siguientes facturas:

| Factura Núm. | Cantidad |
|---|---|
| PHQ039429 | 266.90 |
| PHQ040356 | 22,833.00 |
| PHQ040357 | 19,288.00 |
| PHQ040362 | 1,508.00 |

| | |
|---|---|
| PHQ040363 | 1,630.00 |
| PHQ040364 | 14,700.00 |
| PHQ040755 | 67,781.00 |
| PHQ040768 | 2,208.00 |
| PHQ040947 | 39,327.00 |
| PHQ041131 | 3,626.00 |
| PHQ041296 | 2,627.00 |
| PHQ041571 | 9,221.08 |
| PHQ041647 | 691.00 |
| PHQ041961 | 184.98 |
| PHQ041962 | 8,283.69 |
| PHQ041963 | 28,625.65 |
| PHQ042022 | 25,622.40 |
| PHQ043536 | 3,402.00 |
| PHQ043537 | 5,742.00 |
| PSSIPHQ050067 | 838.88 |
| PSSIPHQ050149 | 251.33 |
| PSSIPHQ050298 | 24.52 |
| PSSIPHQ050369 | 207.60 |
| PSSIPHQ050480 | 43.18 |
| PSSIPHQ050546 | 88.80 |
| PSSIPHQ050851 | 137.00 |
| PSSIPHQ050988 | 1,227.84 |
| PSSIPHQ051065 | 544.45 |
| PSSIPHQ051109 | 183.38 |
| PSSIPHQ051252 | 730.00 |
| PSSIPHQ051324 | 36.16 |
| PSSIPHQ051544 | 9.72 |
| PSSIPHQ051675 | 10.43 |
| PSSIPHQ051840 | 10.42 |
| PSSIPHQ051921 | 51.93 |
| PSSIPHQ051964 | 82.48 |
| PSSIPHQ052150 | 95.60 |
| PSSIPHQ052655 | 9.72 |
| PSSIPHQ052872 | 138.40 |
| PSSIPHQ052979 | 43.15 |
| PSSIPHQ053728 | 128.68 |
| Total | $262,461.37 |

8. LG cursó reclamación de pago formal a USIC bajo los Contratos de Fianza 13160612, 13160613, 13156931 por el incumplimiento de pago de su fiado, ENSYSA, de las facturas antes relacionadas, mediante tres cartas de fecha de 11 de febrero de 2014 de Han Seun Lee a Duhamel Iglesias Cacho.

9. USIC denegó las reclamaciones de pago de LG bajo los Contratos de Fianza, mediante tres cartas de 20 de febrero de 2014 de su Gerente de Reclamaciones, José Luis Rosario, a LG Electronics Panamá SA, aseverando que ENSYSA le había informado a USIC supuestas discrepancias no especificadas en el monto adeudado a LG y que la reclamación era prematura (la "Primera Denegatoria").

10. LG le cursó dos misivas a USIC el 8 de abril y 16 de abril de 2014 para que reconsiderara la denegatoria de pago bajo las Fianzas.

11. USIC reiteró sus denegatorias mediante carta de 23 de abril de 2014 suscrita por su representación legal.

12. De las facturas detalladas en el párrafo número 7 anterior no estaban cubiertas por fianzas específicas y cuyo pago fue reclamado bajo el contrato de fianza 13156931, USIC cuestionó en el transcurso de este litigio, las facturas que se desglosan a continuación, por presuntamente haber sido notificadas a USIC fuera del término dispuesto en la fianza:

| Factura Núm. | Cantidad |
|---|---|
| PHQ039429 | 266.90 |
| PHQ040755 | 67,781.00 |
| PHQ040768 | 2,208.00 |
| PHQ040947 | 39,327.00 |
| PSSIPHQ050067 | 838.88 |
| PSSIPHQ050149 | 251.33 |
| PSSIPHQ050298 | 24.52 |
| PSSIPHQ050369 | 207.60 |
| PSSIPHQ050480 | 43.18 |
| PSSIPHQ050546 | 88.80 |
| PSSIPHQ050851 | 137.00 |
| PSSIPHQ050988 | 1,227.84 |
| PSSIPHQ051065 | 544.45 |
| PSSIPHQ051109 | 183.38 |
| PSSIPHQ051252 | 730.00 |
| PSSIPHQ051324 | 36.16 |
| PSSIPHQ051544 | 9.72 |
| PSSIPHQ051675 | 10.43 |
| Total | $113,916.19 |

Cónsono con estas determinaciones, y a la luz del derecho aplicable, el TPI concluyó que las facturas reclamadas habían sido desglosadas y estipuladas sin objeción en un *Informe para el manejo del caso* presentado por las partes el 17 de junio de 2015.[24] Resolvió también que la declaración jurada del señor Ávila constituía un *sham affidavit*, por lo que era inadmisible. Precisó que el ordenamiento jurídico no permite nuevas defensas mediante una oposición a una solicitud de sentencia sumaria.

Por otro lado, identificó que aún quedaba por resolver la controversia en cuanto a la puntualidad de notificación de las facturas objetadas por USIC por la cantidad de $113,916.19,

---

[24] El referido informe no fue incluido como parte del apéndice del recurso ante nuestra consideración. No obstante, tomamos conocimiento judicial de ello a través de la *Sentencia Sumaria Parcial* apelada, al amparo de la Regla 201 de Evidencia, 32 LPRA Ap. VI, R. 201. Véase también, **UPR v. Laborde Torres y otros I**, 180 DPR 253 (2010).

reclamadas en virtud de la Fianza #13156931. Asimismo, razonó que existía controversia sobre los alegados daños sufridos por LGE por la negligencia y dilación de USIC en el cumplimiento con sus obligaciones.

De conformidad a lo anterior, el TPI concluyó que USIC venía obligada a pagar las facturas impugnadas que no estaban en controversia. Consecuentemente, ordenó a USIC al pago de $498,690.58 por la orden de compra J13-055-A, cubierta por la Fianza #13160613 y, $111,341.45 por la orden de compra J13-055-B, cubierta por la Fianza #13160612.

En desacuerdo, USIC presentó el recurso de *Apelación* de epígrafe y le imputó al TPI la comisión de los siguientes errores:

> Erró el TPI al dictar sentencia sumaria a favor de LG por las sumas de $498,690.58 y $111,341.45 a pesar de que existe controversia real y sustancial sobre el hecho de que LG no le aplicó a cada factura sometida a ENSYSA el descuento estipulado en el párrafo número diez del *Master Supply Agreement* y el Schedule D de dicho contrato.

> Erró el TPI al caracterizar como un hecho incontrovertido el alcance de la defensa afirmativa de USIC sobre la fianza número 13156931 limitando la misma a ciertas facturas cuando el incumplimiento con los términos y condiciones de la factura tiene el efecto de que USIC quede completamente relevado de cualquier reclamación bajo la fianza.

Es su contención que LGE no presentó prueba admisible en evidencia que demostrara que las sumas reclamadas son líquidas y exigibles. Reitera que las facturas reclamadas no contienen firmas que acrediten como correctas las sumas incluidas en estas. Sostiene, además, que la declaración jurada del señor Ávila controvierte tal asunto, al señalar que estas no reflejaban los descuentos estipulados en el Acuerdo de Distribución. De otra parte, alega que presentó varias defensas afirmativas en su *Contestación a la Demanda*, por lo que no es correcto concluir que la defensa de los descuentos fue renunciada, según resolvió el TPI.

A su vez, sostiene que la determinación de hecho número doce (12) debe ser eliminada, pues limita su defensa, relacionada al incumplimiento de LGE de presentar su reclamo en el término correspondiente, a las facturas consignadas en esta.

El 16 de septiembre de 2025, LG presentó un *Alegato de la parte apelada* en el que solicitó que confirmemos el dictamen apelado. En esencia, sostiene que la prueba presentada demostró que no existe controversia sobre las sumas concedidas por el TPI. Sobre la admisibilidad de las facturas, subraya que las partes expresaron en dos ocasiones que no existía disputa en cuanto a la cantidad reclamada por LGE. Por otro lado, con respecto al alegado descuento, manifiesta que este no fue parte de las defensas afirmativas incluidas por la parte apelante en su *Contestación a Demanda*.

En adelante, evaluaremos las normas jurídicas atinentes a los errores planteados por la parte apelante.

**III.**

**A.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad de la reclamación o parte de esta. De esta forma, se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal

resulta en una dilación innecesaria. ***Vera v. Dr. Bravo***, 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. ***PFZ Props., Inc. v. Gen. Acc. Ins. Co.***, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. ***León Torres v. Rivera Lebrón,*** 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 138 (2015); ***Ramos Pérez v. Univisión***, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. ***Ramos Pérez v. Univisión***, supra, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada

sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. Íd., págs. 213-214, *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. ***Meléndez González et al. v. M. Cuebas***, supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a ***Ramos Pérez v. Univisión****,* supra, pág. 214. De esta manera, entre las responsabilidades de la parte promovida se encuentra el puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. ***León Torres v. Rivera Lebrón,*** supra. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. ***SLG Zapata-Rivera v. JF Montalvo***, supra; ***Ramos Pérez v. Univisión***, supra, pág. 215; ***Cruz Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007). Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil, *supra,* en lo

pertinente a este mecanismo procesal. Entre estos, la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) dispone:

> (b) La contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente:
>
> > (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;
> >
> > (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> >
> > (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> >
> > (4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

Si la parte promovida no cumple con los requisitos impuestos por la mencionada regla, el tribunal podría resolver en su contra de entenderlo procedente. Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c). Véase, además, **Cruz Marcano v. Sánchez Tarazona,** supra; **SLG Zapata Berríos v. JF Montalvo,** supra, y **Ramos Pérez v. Univisión Puerto Rico,** supra.

Cabe señalar que la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición defensas o reclamaciones nuevas, ajenas a hechos consignados previamente, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva. **León Torres v. Rivera Lebrón**, supra, pág. 54. Así, se salvaguarda el debido proceso de ley de las partes, especialmente el principio de notificación adecuada y el derecho que tiene un demanda de conocer las alegaciones en su

contra; de forma que este pueda prepararse para el proceso judicial en su contra. Íd., pág. 31.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existan alegaciones afirmativas en la demanda sin refutar; (3) cuando surja de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no proceda como cuestión de derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

Entretanto, desde el punto de vista procesal, la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, impone que, si en virtud de una moción de sentencia sumaria no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y resulta necesario celebrar un juicio, entonces es obligatorio que el tribunal resuelva la moción realizando una determinación: (1) de los hechos esenciales y pertinentes sobre los que no hay controversia sustancial; (2) de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos; (3) de hasta qué extremo la cuantía de los daños u otra reparación no está en controversia; y (4) ordenando los procedimientos ulteriores que entienda justos, lo cual podría incluir una vista evidenciaria limitada a los asuntos en controversia. En dicho caso, al celebrarse el juicio se considerarán probados los hechos especificados, se procederá en conformidad y, a base de las determinaciones realizadas en virtud de esta regla, se dictarán los remedios que correspondan, si alguno. Íd.

De otra parte, en *Meléndez González et al. v. M. Cuebas*, supra, el Tribunal Supremo delineó el estándar que el Tribunal de

Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra,* y los criterios que la jurisprudencia le exige al foro primario. Íd., pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Íd.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho. Íd., pág. 119.

**B.**

Es norma reiterada que las estipulaciones obligan tanto al Tribunal como a las partes. **Coll v. Picó**, 82 DPR 27, 36 (1960), y **Rivera Menéndez v. Action Service**, 185 DPR 431, 440 (2012). En el caso de **Rivera Menéndez v. Action Service**, supra, págs. 439-440, el Tribunal Supremo resolvió que:

> Las estipulaciones son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas. Estas son favorecidas en nuestro ordenamiento porque eliminan desacuerdos, y de esa forma, facilitan y simplifican la solución de las controversias jurídicas. Por ello, las estipulaciones son herramientas esenciales en las etapas iniciales del proceso judicial y su uso es promovido por las Reglas de Procedimiento Civil.

En nuestro ordenamiento jurídico se han reconocido tres tipos de estipulaciones. Íd. La primera de éstas trata sobre las admisiones de hechos y tienen el efecto de relevar a la parte del requisito de probarlos. Una vez un hecho es estipulado no puede ser impugnado. La estipulación del hecho, de ordinario constituye una admisión de su veracidad y obliga tanto a las partes como al tribunal. Íd., págs. 430-439; **Díaz Ayala et al. v. E.L.A.**,153 DPR 675, 693 (2001); **Ramos Rivera v. E.L.A.**, 148 DPR 118, 126 (1999); **P.R. Glass Corp. V. Tribunal Superior**, 103 DPR 223, 230-231 (1975). La segunda clase de estipulaciones es la que reconoce derechos. **Rivera Menéndez v. Action Service**, supra, pág. 440.

Por otro lado, la tercera clase de estipulaciones es aquella que trata sobre materias procesales, donde las partes pueden estipular la forma y manera en la que llevarán determinado curso de acción o el que se admita determinada prueba. Íd. Ahora bien, el Tribunal Supremo aclaró que: "[l]a estipulación de un hecho, contrario a la estipulación sobre la autenticación de evidencia, implica el relevo de prueba de ese hecho, por tal razón, los tribunales no debemos dar un hecho por estipulado si ello no surge claramente de lo acordado por las partes". Íd., pág. 443.

**IV.**

A tenor con la normativa jurídica pormenorizada, nuestra revisión de la sentencia sumaria es de *novo,* aunque limitada a la prueba documental presentada ante el foro de primera instancia. Véase, entre otros, **Rivera Matos, et al v. Triple-S Propiedad, Inc. y ACE Insurance Company**, 204 DPR 1010 (2020). A su vez, debemos examinar el expediente de la manera más favorable a la parte que se opone a la solicitud de sentencia sumaria. **Meléndez González, et al. v. M. Cuebas**, *supra,* pág. 118. Conforme a ello, procederemos a revisar la corrección de la *Sentencia Sumaria Parcial* apelada.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, resolvemos que el TPI no cometió los errores imputados. Los hechos consignados en la *Sentencia Sumaria Parcial* encuentran apoyo en los documentos que obran en autos y que fueron examinados por el foro primario. No existe controversia sobre estos, por lo cual, los hacemos formar parte de la presente sentencia.[25]

No obstante, en su primer señalamiento de error, USIC insiste en que las facturas reclamadas están en controversia, alegando que LGE no presentó evidencia admisible que demostrara que las sumas requeridas son líquidas y exigibles. Señala que las facturas incluidas como parte de la solicitud de sentencia sumaria de LGE no están firmadas. Asimismo, sostiene que la declaración jurada del señor Ávila controvierte la liquidez y exigibilidad de las cuantías

---

[25] Advertimos que las determinaciones de hecho número siete (7) y doce (12) de la *Sentencia Sumaria Parcial*, en relación a la factura número PSSIPHQ050067, debe reflejar la suma de $1,178.79 y no $838.88, según consta en los documentos que obran del expediente. Véase, Entrada Núm. 12 del apéndice del recurso en SUMAC-TA. Consecuentemente, el total en la tabla incluida en la determinación de hecho número siete (7) debe ser $262,801.28, y en la determinación de hecho número (12), $114,256.10. La factura en cuestión fue objetada por USIC, por lo que aún se encuentra ante la consideración del foro primario. La corrección antes señalada no incide en lo resuelto por el TPI mediante el dictamen recurrido ni altera las cuantías concedidas, sino que se limita a asegurar que las determinaciones de hecho consignadas reflejen fielmente la evidencia presentada.

reclamadas, pues demuestra que LGE no aplicó el descuento pactado en el Acuerdo de Distribución. No le asiste la razón.

Del expediente ante nuestra consideración surge palmariamente que las facturas reclamadas por LGE fueron desglosadas y estipuladas sin objeción en el *Informe para el manejo del caso* presentado por las partes de epígrafe el 17 de junio de 2015. Posteriormente, tanto en la vista celebrada el 30 de marzo de 2016, como en la *Moción Conjunta* presentada el 16 de junio de 2016, las partes informaron que no existía controversia en cuanto a la cantidad reclamada.

Obsérvese que se trata de al menos de tres (3) instancias en las que USIC y ENSYSA no alegaron controversia alguna sobre las facturas ni en cuanto a su autenticidad ni en cuanto a su contenido, sino que validaron su corrección e incluso las estipularon.

Conforme a lo esbozado en la sección anterior, las estipulaciones constituyen admisiones judiciales que obligan tanto a las partes como al tribunal y no pueden ser impugnadas posteriormente. ***Rivera Menéndez v. Action Service***, supra, págs. 439-440. Toda vez que las facturas reclamadas por LGE fueron estipuladas por las partes de epígrafe, cualquier alegación relativa a su inadmisibilidad, incluyendo la formulada por USIC sobre la falta de firmas, carece de méritos.

En esa línea, sobre el argumento de USIC en cuanto a que la declaración jurada del señor Ávila controvirtió la liquidez y exigibilidad de las sumas reclamadas, conviene señalar lo siguiente. La primera vez que USIC trae al pleito el planteamiento sobre los descuentos a los que hace referencia el señor Ávila es en la *Oposición a solicitud de apertura del caso, moción eliminatoria y, en la alternativa, solicitud al amparo de las Reglas 36.5 y 36.6 de Procedimiento Civil,* con el propósito de apoyar su requerimiento de un término para llevar a cabo un descubrimiento de prueba previo

a contestar la moción de sentencia sumaria parcial.[26] Posteriormente, reproduce su planteamiento en su *Oposición a moción solicitando sentencia sumaria parcial*. Tal actuación resulta contraria a la normativa jurisprudencial vigente, la cual establece que la oposición a una moción de sentencia sumaria no es el vehículo procesal apropiado para introducir nuevas reclamaciones o defensas. ***León Torres v. Rivera Lebrón***, supra. Aunque en su *Contestación a la Demanda* USIC levantó defensas sobre incumplimiento de contrato, ninguna está relacionada ni hace referencia directa a los alegados descuentos. Tampoco consta en autos que USIC enmendara sus defensas, ni que el TPI lo autorizara. En vista de ello, tanto la declaración jurada como los planteamientos relacionados con los descuentos son improcedentes. Consecuentemente, resulta forzoso concluir que USIC no controvirtió oportunamente los hechos propuestos por LGE, por lo que el TPI no cometió el primer señalamiento de error.

Por otro lado, en su segundo señalamiento de error, la parte apelante alega que el TPI limitó su defensa afirmativa sobre la Fianza #13156931, al incluir en sus determinaciones de hechos una lista taxativa de las facturas objetadas.

De entrada, advertimos que gran parte de la discusión incluida por USIC en apoyo a este señalamiento de error aborda asuntos relacionados con la controversia pendiente ante el foro primario sobre la reclamación bajo la Fianza #13156931. No obstante, el foco de su error se centra en la supuesta improcedencia de la determinación de hecho número doce (12). En esencia, USIC sostiene que dicha determinación debe ser eliminada, pues aparenta limitar su defensa a varias facturas reclamadas bajo la Fianza

---

[26] Véase Entrada Núm. 14 del apéndice del recurso en SUMAC-TA.

#13156931 que suman $113,916.19, y no al total de tal reclamación, a saber, $262,451.37. No nos persuade.

Según consta en el expediente, USIC no objetó todas las facturas reclamadas por LGE bajo la Fianza #13156931. Por el contrario, la parte apelante solo impugnó las facturas que precisamente fueron consignadas por el TPI en la determinación de hecho número doce (12). De modo que, dicha determinación se circunscribe a enumerar las facturas objeto de impugnación y no adjudica controversia alguna que limite la defensa de USIC, contrario a lo que esta arguye. El TPI tampoco cometió el segundo error.

En síntesis, los señalamientos de error formulados por la parte apelante no fueron cometidos. El TPI actuó correctamente al dictar la *Sentencia Sumaria Parcial* apelada en cuanto a las facturas incontrovertidas.

**V.**

Por los fundamentos pormenorizados, se *confirma* la *Sentencia Sumaria Parcial* apelada. Se devuelve el caso al foro primario para la continuación de los procesos.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones